**Electronically Filed
Supreme Court
SCWC-12-0000025
10-APR-2019
09:39 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI‘I

---o0o---

GORAN PLEHO, LLC, a Hawai‘i Limited Liability Company (dba
Resorts Limousine Services), GORAN PLEHO and ANA MARIA PLEHO,
Petitioners/Plaintiffs-Appellants/Cross-Appellees,

vs.

DAVID W. LACY, LACY AND JACKSON, LLLC,
a Hawai‘i Limited Liability Law Company,
Respondents/Defendants-Appellees/Cross-Appellants,

and

DRAGAN RNIC, Respondent/Defendant-Appellee.

SCWC-12-0000025

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0000025; CIVIL NO. 06-1-101K)

APRIL 10, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

DISSENTING OPINION BY RECKTENWALD, C.J.,
IN WHICH NAKAYAMA, J., JOINS

## I.   INTRODUCTION

Each state has enacted consumer protection legislation.[1]  Many of these statutes are modeled after the Federal Trade Commission Act (FTCA) and are thus referred to as "little FTC Acts."[2]  Hawaiʻi's corollary to FTCA § 5, HRS § 480-2,[3] was "constructed in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive practices for the protection of both consumers and honest businessmen."  Kukui Nuts of Hawaii, Inc. v. R. Baird & Co., 7 Haw. App. 598, 610, 789 P.2d 501, 510 (1990) (quoting Ai v. Frank Huff Agency, Ltd., 61 Haw. 607, 616, 607 P.2d 1304, 1311 (1980)).  Much like FTCA § 5(a)(1) and similar provisions in little FTC acts from several other states,[4] it outlaws "[u]nfair methods of competition and unfair or deceptive acts or practices in the

---

[1]      See Randall Scott Hetrick, Unfair Trade Practices Acts Applied to Attorney Conduct: A National Review, 18 J. Legal Prof. 329, 330 n.7 (1993) (listing consumer protection legislation from all 50 states).

[2]      Section 5(a)(1) of the Federal Trade Commission Act is codified as 15 U.S.C. § 45(a)(1).

[3]      Chapter 481A of the Hawaiʻi Revised Statutes, entitled the Uniform Deceptive Trade Practice Act, is often referred to as Hawaiʻi's little FTC act.  See, e.g., Reauthorization of the Federal Trade Commission, 1982 Hearings on S. 1984 Before the Senate Comm. on Commerce, Science, and Transportation, 97th Cong., 2d Sess., 46, n.9 (listing HRS § 481A as Hawaiʻi's little FTC act).  HRS § 480-2, however, is Hawaiʻi's version of Section 5 of the FTCA.  Chapter 481A codifies common law concepts of unfair competition which fall within the purview of Section 5 of the FTCA and HRS § 480-2.

[4]      See ALASKA STAT. § 45.50.471(a); CONN. GEN. STAT. § 42-110b; FLA. STAT. § 501.204(1); GA. CODE § 10-1-393; KY. REV. STAT. § 367.170; ME. REV. STAT. tit. 5, § 207; MONT. CODE § 30-14-103; NEB. REV. STAT. § 59-1602; N.H. REV. STAT. § 358-A:2; N.C. GEN. STAT. § 75-1.1(a); 73 PA. STAT. § 201-3; 6 R.I. GEN. LAWS § 6-13.1-2; S.C. CODE § 39-5-20(a); VT. STAT. TIT. 9, § 2453; WASH. REV. CODE § 19.86.020; W. VA. CODE § 46A-6-104.

conduct of any trade or commerce." HRS § 480-2(a).

Whether a client may bring a UDAP action against his or her lawyer under HRS § 480-2 is a question of first impression before this court.[5] As set forth below, I conclude that under HRS § 480-2, UDAP liability does not apply to the actual practice of law. I further conclude that Lacy's alleged misconduct falls within the actual practice of law, rather than the business or entrepreneurial aspects of the legal profession. Therefore, I respectfully dissent from the Majority's ruling vacating the circuit court's grant of summary judgment on Goran and Maria's UDAP claim and remanding the claim for further proceedings.

## II. DISCUSSION

### A UDAP Liability Does Not Apply to The Actual Practice of Law Under HRS § 480-2

In applying HRS § 480-2, courts are directed to "give due consideration to the rules, regulations, and decisions of the Federal Trade Commission (FTC) and the federal courts" interpreting FTCA § 5(a)(1). HRS § 480-2(b). Due consideration, however, implies reasoned judgment appropriate to the circumstances.

As the House Committee on Housing and Consumer Protection explained, HRS § 480-2 "provides that the courts, in

---

[5] It appears Hungate v. Law Office of David B. Rosen, 139 Hawaiʻi 394, 391 P.3d 1 (2017), is the only Hawaiʻi case involving a UDAP claim brought against an attorney. In Hungate, this court declined to recognize a UDAP claim brought against an attorney by an opposing party. 139 Hawaiʻi at 412-13, 391 P.3d at 19-20.

construing its terms, will be guided by the interpretations given by the Federal Trade Commission and the Federal courts to the appropriate sections of the Federal Trade Commission Act. <u>In each case, however, the courts of Hawai'i must also necessarily give due regard to the problems peculiar or pertinent to the State of Hawai'i</u>." H. Stand. Comm. Rep. No. 55, in 1965 House Journal, at 539 (emphasis added). In determining whether HRS § 480-2 applies to the actual practice of law, we should look not only to federal case law and FTC guidance, but also to relevant case law from other states, this court's interpretations of HRS § 480-2, and considerations specific to the State of Hawai'i. As set forth below, the imposition of UDAP liability upon the actual practice of law is contrary to this court's interpretations of HRS § 480-2, unsupported by federal guidance and case law from other states, unnecessary and duplicative, and against public policy. I therefore conclude that UDAP liability does not apply to the actual practice of law under HRS § 480-2.

1. **No Published Federal Case Applies UDAP Liability to the Actual Practice of Law**

It is well-settled that lawyers may be subject to antitrust liability under FTCA § 5(a)(1). The United States Supreme Court has held that "[t]he nature of an occupation, standing alone, does not provide sanctuary from the Sherman Act" and a lawyer who violates section 1 of the Sherman Act by engaging in anticompetitive practices also violates FTCA

4

§ 5(a)(1).  <u>Goldfarb v. Virginia State Bar</u>, 421 U.S. 773, 787
(1975); <u>Fed. Trade Comm'n v. Superior Court Trial Lawyers Ass'n</u>,
493 U.S. 411, 422 (1990).

The fact that lawyers may be subject to liability under
FTCA § 5(a)(1) for engaging in anticompetitive business practices
does not, however, mean lawyers are also exposed to UDAP
liability when engaged in the actual practice of law.  Following
the Supreme Court's acknowledgment that "[i]t would be
unrealistic to view the practice of professions as
interchangeable with other business activities," federal courts
have long recognized a distinction between the business or
entrepreneurial aspects of the legal profession and the actual
practice of law.  <u>Goldfarb</u>, 421 U.S. at 788, 788 n.17; <u>Gadson v.
Newman</u>, 807 F.Supp. 1412, 1416-17 (C.D. Ill. 1992) (discussing
<u>Goldfarb</u> in the context of the "business aspects of the legal and
medical professions"); <u>Kessler v. Loftus</u>, 994 F.Supp. 240, 242
(D. Vt. 1997) (stating "many jurisdictions differentiate between
the commercial, entrepreneurial aspects of law and the legal,
advisory, analytical aspects of law," and providing examples).

UDAP liability imposed upon attorneys by federal courts
has been limited to the business or entrepreneurial aspects of
the legal profession.  The Majority misconstrues federal case law
as "clear precedent" that the practice of law is subject to UDAP
liability under the FTCA.  However, it does not appear any
federal court has applied UDAP liability to the actual practice

5

of law under FTCA § 5(a)(1).  Each federal case cited by the

Majority is distinguishable on the grounds that it: i) does not

involve claims brought under the FTCA; ii) fails to find a

violation; iii) imposes liability upon the business or

entrepreneurial aspects of the legal profession; or iv) is an

unpublished decision that may have persuasive value, but does not

constitute binding precedent.[6]  Thus, federal courts provide

minimal guidance on the question at issue.

### 2. FTC Guidance Makes Clear That This Court is Not Bound by Federal Interpretations of the FTCA

Turning to relevant FTC guidance, the Majority relies

on Heslin v. Connecticut Law Clinic of Trantolo & Trantolo, 461

A.2d 938 (Conn. 1983), to demonstrate that the FTC "has

maintained that state-regulated professions, including the

---

[6]      Goldfarb v. Va. State Bar, 421 U.S. 773 (1975) (finding a minimum-fee schedule published by a county bar association and enforced by the state bar violated section 1 of the Sherman Act); Bates v. State Bar of Ariz., 433 U.S. 350 (1977) (holding that attorneys cannot be subjected to a blanket ban on advertising, as the "belief that lawyers are somehow above 'trade' is an anachronism," and publicly eschewing advertising may actually be detrimental to the legal profession); Fed. Trade Comm'n v. Super. Ct. Trial Lawyers Ass'n, 493 U.S. 411 (1990) (finding a group of lawyers appointed to represent indigent criminal defendants violated FTC section 5(a)(1) by conspiring to fix prices and refusing to accept new assignments); Fed. Trade Comm'n v. Lanier Law, LLC, 194 F.Supp.3d 1238 (M.D. Fla. 2016) (finding attorneys violated FTCA § 5(a)(1), but noting "the [c]ourt is exceedingly skeptical that the superficial work given to these attorneys constitutes the 'practice of law' by any definition"); Fed. Trade Comm'n v. Lucas, No. 10-56985, 2012 WL 4358009 (9th Cir. Sept. 25 2012) (unpublished dispositions and orders of the Ninth Circuit are not precedent, pursuant to Ninth Circuit Rule 36-3(a); Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C., 114 F.Supp.3d 1342 (N.D. Ga. 2015) (addressing claims brought under the Fair Debt Collection Practices Act and the Consumer Financial Protection Act, rather than the FTCA); McDevitt v. Guenther, 522 F.Supp.2d 1272 (D. Haw. 2007) (disposing of a 480-2 claim because, as threshold matters, the applicable statute of limitations had run and the damages alleged were speculative).

practice of law, are not and should not be exempted from coverage of the FTCA." Majority at 19, n.13 (internal quotations omitted). While the FTC may have taken this position with regard to the application of the FTCA, the FTC has also conceded that the extent to which states follow federal interpretations of FTCA § 5 in applying their respective state consumer protection laws "would have to be resolved by the state courts."[7]

In fact, just prior to the Heslin decision, then-chairman of the FTC, James C. Miller III appeared before the Senate Committee on Commerce, Science, and Transportation. He stated, "we have not found any decisions holding that interpretations of [FTCA] Section 5 are binding on state administrative agencies and courts. On the contrary, several courts have held that although federal court decisions provide useful guidance, they are not controlling." Reauthorization of the Federal Trade Commission, 1982 Hearings on S. 1984 Before the Senate Comm. on Commerce, Science, and Transportation, 97th Cong., 2d Sess., 45 (citations omitted) (emphasis added).

Furthermore, it is imperative to note that despite its recognition of the FTC's position in Heslin, the Connecticut

---

[7]    The Heslin Court cited a letter written by the FTC's then-chairman, James C. Miller III, in preparation for a Senate Committee hearing. Heslin, 461 A.2d at 943. During the same hearing, however, Miller acknowledged that federal guidance is not binding on states' interpretations of their respective consumer protection statutes. Reauthorization of the Federal Trade Commission, 1982 Hearings on S. 1984 Before the Senate Comm. on Commerce, Science, and Transportation, 97th Cong., 2d Sess., 45 (citations omitted).

Supreme Court has determined that Connecticut's UDAP statute –
which is almost identical to HRS § 480-2(a) - does not apply to
the actual practice of law.[8]  See Heslin, 461 A.2d at 943 ("[W]e
need only conclude that CUTPA's regulation . . . does not totally
exclude all conduct of the profession of law."); Beverly Hills
Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin, 717 A.2d
724, 740 (Conn. 1998) ("only the entrepreneurial aspects of the
practice of law are covered by [Connecticut's consumer protection
statute]").

Therefore, not only does federal case law fail to
clearly address the application of UDAP liability to the actual
practice of law under FTCA § 5(a)(1), FTC guidance makes clear
that this court is not bound by federal interpretations of the
FTCA in determining whether the actual practice of law may be
subject to UDAP liability under HRS § 480-2.  With regard to the
application of UDAP liability to the practice of law, this
court's first concern is interpreting HRS § 480-2, even if doing
so means diverging from federal interpretations of the FTCA.

3.    **States Overwhelmingly Exclude the Actual Practice of
      Law From UDAP Liability**

Where federal courts do not provide dispositive
guidance, "insofar as many, if not most, of the several states'

---

[8]    Compare CONN. GEN. STAT. § 42-110b(a) ("No person shall engage in
unfair methods of competition and unfair or deceptive acts or practices in the
conduct of any trade or commerce.") with HRS § 480-2(a) ("Unfair methods of
competition and unfair or deceptive acts or practices in the conduct of any
trade or commerce are unlawful.").

8

consumer protection statutes, including Hawai'i's, have a common genesis in the federal antitrust statutes, we look to other jurisdictions for guidance." Cieri v. Leticia Query Realty, Inc., 80 Hawai'i 54, 62-63, 905 P.2d 29, 37-38 (1995). Other than Massachusetts, each state that has specifically addressed the application of its consumer protection statute to attorneys has determined that the actual practice of law falls outside the scope of UDAP liability. See Cripe v. Leiter, 703 N.E.2d 100, 105 (Ill. 1998) ("there appears to be little dispute among the decisions addressing this issue that consumer protection statutes do not apply to claims arising out of the 'actual practice of law.'"); Beyers v. Richmond, 937 A.2d 1082, 1086-87 (Pa. 2007) (discussing cases); see also 17 Am. Jur. 2d Consumer Protection § 288 (2018) ("State consumer protection or deceptive trade practices statutes generally apply only to the business aspects of the practice of law, excluding coverage of lawyers engaged in the practice of law.").

Some states statutorily address the application of their respective consumer protection statutes to attorneys. Each one exempts the actual practice of law from the purview of UDAP liability.[9] In the remaining states, including Hawai'i, the

---

[9] MD. CODE ANN., COM. LAW § 13-104 (the Consumer Protection Act of Maryland does not apply to "[t]he professional services of a . . . lawyer"); N.C. Gen. Stat. Ann. § 75-1.1(b) (exempting professional services rendered by a member of a learned profession from liability under North Carolina's UDAP statute); Reid v. Ayers, 531 S.E.2d 231, 236 (N.C. Ct. App. 2000) (the

(continued...)

courts are tasked with determining whether the actual practice of law is subject to UDAP liability.

Courts in New Jersey, New Hampshire, and Pennsylvania have categorically excluded <u>all</u> attorney conduct - both the business aspects of the legal profession and the actual practice of law - from UDAP liability to avoid interference with the regulation of the legal profession by their respective supreme courts. <u>See, e.g.</u>, <u>Vort v. Hollander</u>, 607 A.2d 1339, 1342 (N.J. Super. Ct. App. Div. 1992) ("[T]he practice of law in the State of New Jersey is in the first instance, if not exclusively, regulated by the New Jersey Supreme Court. Had the legislature intended to enter the area of attorney regulation it surely would have stated with specificity that attorneys were covered under the Consumer Fraud Act") (internal citations omitted); <u>Averill v. Cox</u>, 761 A.2d 1083, 1088 (N.H. 2000) (the Supreme Court of New Hampshire's "comprehensive" regulation of the practice of law

_____

(...continued)
statutory "learned profession" exemption to North Carolina's UDAP statute applies when an attorney is acting within the scope of the traditional attorney-client role, but not when the attorney is engaged in the entrepreneurial aspects of legal practice); OHIO REV. CODE ANN. § 1345.01 (for purposes of Ohio's UDAP legislation, "'Consumer transaction' does not include . . . transactions between attorneys . . . and their clients"); Tex. Bus. & Com. Code Ann. § 17.49(c) (Texas's Deceptive Trade Practices-Consumer Protection Act does not "apply to a claim for damages based on the rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill."); <u>Streber v. Hunter</u>, 221 F.3d 701 (5th Cir. 2000) (the Texas Deceptive Trade Practices Act applies to lawyers, but expressly excludes from liability anything that can be characterized as advice, judgment, or opinion); D.C. Code Ann. § 28-3903(c)(2)(C) (Washington D.C.'s UDAP statute does not apply to "professional services of clergymen, lawyers, and Christian Science practitioners engaging in their respective professional endeavors").

"protects consumers from the same fraud and unfair practices" as the state consumer protection act); <u>Beyers</u>, 937 A.2d at 1089-92 (Pennsylvania's consumer protection law does not apply to a dispute over the disbursement of settlement funds because the Supreme Court of Pennsylvania has "exclusive authority" over the regulation of attorney conduct).

Courts in other states have extended UDAP liability to the business or entrepreneurial aspects of the legal profession, while excluding the actual practice of law from the scope of liability.[10]  <u>See, e.g.</u>, <u>Short v. Demopolis</u>, 691 P.2d 163, 168 (Wash. 1984) (certain entrepreneurial aspects of the practice of law may fall within the 'trade or commerce' definition of Washington's consumer protection act, but claims that concern the actual practice of law are exempt from the CPA); <u>Beverly Hills Concepts</u>, 717 A.2d at 740 ("only the entrepreneurial aspects of the practice of law are covered by [Connecticut's consumer protection statute]"); <u>Cripe</u>, 703 N.E.2d at 107 ("where allegations of misconduct arise from a defendant's conduct in his or her capacity as an attorney representing a client, the Consumer Fraud Act [of Illinois] does not apply."); <u>Kessler</u>, 994

---

[10]     The Majority opinion asserts that these state court decisions are "directly contrary to this court's own precedent and the federal sources the statute expressly instructs us to consider."  Majority at 23-24, n.16.  However, the cases cannot be "directly contrary to this court's own precedent," as the applicability of UDAP liability to the practice of law is a question of first impression before this court.  Additionally, as noted in Justice Pearson's concurrence in <u>Short</u> and discussed <u>infra</u>, federal case law does not support the application of UDAP liability to the practice of law.  <u>Short v. Demopolis</u>, 691 P.2d 163 (Wash. 1984) (Pearson, J., concurring).

F.Supp. at 243 (Vermont's Consumer Fraud Act applies to the commercial, entrepreneurial aspects of the practice of law, but not the legal, advisory, analytical aspects of law).  The business or entrepreneurial aspects of the legal profession include, for example, "how the price of legal services is determined, billed, and collected and the way a law firm obtains, retains, and dismisses clients," but not "the actual practice of law."  Short, 691 P.2d at 168.

It appears Massachusetts is the only state to apply UDAP liability to the actual practice of law.  See Brown v. Gerstein, 460 N.E.2d 1043 (Mass. App. Ct. 1984) (citing Guenard v. Burke, 443 N.E.2d 892 (Mass. 1982) (a couple's UDAP claim against their attorney for allegedly misrepresenting that a foreclosure sale of the clients' property would not take place should have been considered on its merits because "the practice of law constitutes 'trade or commerce' for purposes of liability under [Massachusetts' UDAP statute]").  Thus, states that have addressed the issue almost unanimously reject the application of UDAP liability to the actual practice of law.

### a.  It is Most Appropriate for This Court to Look to Washington Case Law for Guidance

The Majority relies heavily on Cieri, 80 Hawaiʻi 54, 905 P.2d 29 (1995), for the proposition that Hawaiʻi courts have already endorsed, and should continue to follow, Massachusetts' framework for analyzing the applicability of UDAP liability.  I

respectfully disagree.

First, as discussed above, Massachusetts is unique in its application of UDAP liability.  Although the Cieri court found Massachusetts case law to be instructive in the specific context of a real estate broker facilitating a real estate transaction, the court did not adopt the entire body of Massachusetts case law regarding the application UDAP liability, nor did it hold that, in the absence of Hawaiʻi precedent, Massachusetts is the only jurisdiction Hawaiʻi courts should look to for guidance.  Id. at 63-65, 905 P.2d at 38-40.

The Cieri court indicated that this court should consult case law from other states in determining how HRS § 480-2(a) should be applied.  It stated, "insofar as many, if not most, of the several states' consumer protection statutes, including Hawaiʻi's, have a common genesis in the federal antitrust statutes, we look to other jurisdictions for guidance." Id. at 62-63, 905 P.2d at 37-38.  Massachusetts is just one such jurisdiction.

It is most appropriate for this court to consider Washington case law regarding the application of UDAP liability.  First, our Legislature specifically considered Washington's consumer protection statute in enacting HRS § 480-2.  The House Committee on Housing and Consumer Protection introduced the proposal to enact HRS § 480-2 by stating, "[a] law similar in effect to the Federal law was enacted by the State of Washington

13

in 1961.  Your committee is informed that the Washington law, like the Federal law, has been most effective in dealing with unfair and deceptive business practices."  H. Stand. Comm. Rep. No. 55, in 1965 House Journal, at 538.  It further explained, "[y]our Committee concludes that a law similar in effect to the federal law dealing with unfair and deceptive business practices is essential to a State-sponsored fair business program in Hawai'i."  H. Stand. Comm. Rep. No. 267, in 1965 House Journal, at 600.

Soon thereafter, the Legislature enacted HRS § 480-2(a), which is almost identical to Washington's UDAP provision. Compare HRS § 480-2(a) ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.") with Wash. Rev. Code Ann. § 19.86.020 ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.").

Second, this court has, in fact, looked to Washington's case law for guidance regarding the application of HRS § 480-2. In Hungate, this court declined to recognize a UDAP claim brought against an attorney by an opposing party.  As discussed in more detail infra, the Hungate court explained the public policy underlying its holding by adopting reasoning from Justice Pearson's concurring opinion in Short v. Demopolis, a Washington Supreme Court case.  See Hungate v. Law Office of David B. Rosen,

14

139 Hawai'i 394, 413, 391 P.3d 1, 20 (2017) (citing <u>Short v. Demopolis</u>, 691 P.2d 163, 172 (Wash. 1984) (Pearson, J., concurring)); <u>see</u> <u>also</u> <u>Field, Trustee of Estate of Aloha Sports Inc. v. National Collegiate Athletic Association</u>, 143 Hawai'i 362, 431 P.3d 735 (2018).

**b.      Washington Courts Exclude the Actual Practice of Law from UDAP Liability**

In <u>Short</u>, the Washington Supreme Court held that "certain entrepreneurial aspects of the practice of law may fall within the trade or commerce definition of [Washington's Consumer Protection Act]," but excluded the actual practice of law from UDAP liability.  <u>Short</u>, 691 P.2d at 168 (internal quotations omitted).  The court stated:

> [D]efendant's counterclaims primarily challenge the entrepreneurial aspects of legal practice . . . . These business aspects of the legal profession are legitimate concerns of the public which are properly subject to the CPA.
>
> However, a few of defendant's claims as a matter of law are outside the purview of the CPA and were properly dismissed by the trial court.  Defendant alleges . . . claims [that] are not chiefly concerned with the entrepreneurial aspects of legal practice; rather, <u>they concern the actual practice of law</u>. Since these claims are directed to the competence of and strategy employed by plaintiff's lawyers, <u>they amount to allegations of negligence or malpractice and are exempt from the CPA</u>.

<u>Id.</u> (emphases added) (internal citations omitted).

An en banc panel of the Washington Supreme Court affirmed <u>Short</u> in <u>Eriks v. Denver</u>, 824 P.2d 1207 (Wash. 1992) (en banc).  The <u>Eriks</u> court reiterated that "[t]he CPA only applies

15

to acts occurring in trade or commerce [and t]he provision of legal services does not generally fall within the definition of trade or commerce, except as those services relate to the entrepreneurial aspects of the practice of law." Id. at 1214 (internal quotations omitted).

Justice Pearson's concurrence in Short, whick this court relied on in Hungate and cited approvingly in Field, further explained that the application of UDAP liability to the actual practice of law would be contrary to federal interpretations of the FTCA and public policy. Short, 691 P.2d at 171 (Pearson, J., concurring); Hungate, 139 Hawaiʻi at 413, 391 P.3d at 20; Field, 143 Hawaiʻi at 378, 431 P.3d at 751. Justice Pearson highlighted the fact that federal UDAP case law only applies liability to the business or entrepreneurial aspects of the legal profession, rather than the actual practice of law, as follows:

> The question of whether professional activities of attorneys, as members of a "learned profession", can constitute "trade or commerce" was answered in the affirmative in [Goldfarb]. . . .
>
> It is of critical importance to note, however, that Goldfarb dealt only with the "business aspect" of the law profession. The same is true of other federal cases imposing liability upon lawyers under the Sherman Act. . . . These cases dealt with price fixing agreements and other anticompetitive devices, rather than the actual practice of law. To fail to make this distinction would be to equate the actual practice of law with ordinary commercial enterprise, something which the Court in Goldfarb expressly refused to do. . . .

16

> This commercial-noncommercial distinction was sharply
> drawn in [Marjorie Webster], where the court . . .
> stated that the "proscriptions of the Sherman Act were
> 'tailored . . . for the business world,' not for the
> noncommercial aspects of the . . . learned
> professions."  The rationale of Marjorie Webster . . .
> together with the narrowness of the Court's opinion in
> Goldfarb, mandate a conclusion that the direction of
> the law is toward validating judicial exemptions for
> noncommercial aspects of the professions. . . .

Short, 691 P.2d 171-72 (Pearson, J., concurring) (citations

omitted) (citing Goldfarb, 421 U.S. at 787-88 and Marjorie

Webster Junior College, Inc. v. Middle States Ass'n of Colleges

and Secondary Schs., Inc., 432 F.2d 650, 654 (D.C. Cir.), cert.

denied, 400 U.S. 965 (1970)).

Justice Pearson then articulated that the application

of UDAP liability to the actual practice of law would be contrary

to public policy.  Justice Pearson explained:

> There are sound reasons of public policy . . .
> supporting the commercial-noncommercial distinction we
> adopt in this case. Our state's Consumer Protection
> Act has no general requirement of fault. . . .  Thus,
> if the act complained of was in fact deceptive,
> although done with the best of intentions, liability
> could result under the CPA regardless of the care
> taken in providing the service. Such a state of
> affairs would make it virtually impossible for an
> attorney to effectively perform the traditional role
> of legal counselor.  The law is often vague and
> unsettled; several legal opinions are often possible,
> especially in borderline cases.  Liability should be
> imposed only where an attorney has failed to use due
> care to serve a client.  Imposition of liability under
> the CPA, however, would require an attorney to
> guarantee much more than just the care used in forming
> his opinions.  Since even a carefully rendered opinion
> could, if incorrect, have the capacity to deceive, the
> attorney would have to insure the correctness of his
> opinions and strategies.  I sincerely doubt that the
> CPA was intended to so radically alter the standard of

17

care owed by lawyers and other professionals.

Short, 691 P.2d 163, 172 (Pearson, J., concurring) (emphases added).

This court adopted Justice Pearson's reasoning in Hungate. We recognized that "[i]n a UDAP action, an attorney would be especially vulnerable to suit" because, like Washington's UDAP statute, under HRS § 480-2, "actual deception need not be shown; the capacity to deceive is sufficient." Hungate, 139 Hawaiʻi at 413, 391 P.3d at 20 (citing Hawaiʻi Cmty. Fed. Credit Union v. Keka, 94 Hawaiʻi 213, 228, 11 P.3d 1, 16 (2000) and Short, 691 P.2d 163, 172); Field, 143 Hawaiʻi at 378, 431 P.3d at 751; McRae v. Bolstad, 676 P.2d 496, 500 (Wash. 1984) (en banc) ("Under the Consumer Protection Act, . . . proof of intent to deceive or defraud is not necessary if the action 'has the capacity to deceive a substantial portion of the purchasing public.'"). As such, applying UDAP liability to the actual practice of law, "[g]iven that UDAP lacks a more rigorous or precise state of mind requirement" would render it "virtually impossible for an attorney to effectively perform the traditional role of legal counselor."[11]  Hungate, 139 Hawaiʻi at 413, 391 P.3d at 20 (citations omitted).

---

[11]    Though the Hungate court specifically addressed a UDAP claim brought against an attorney by an opposing party, rather than a client, the policy concerns discussed in Hungate apply equally here.  Short, 691 P.2d 163, 172 (Pearson, J., concurring).

4.    **Considerations Specific to the State of Hawai'i and HRS § 480-2 Weigh Against The Imposition of UDAP Liability on The Actual Practice of Law**

In addition to relevant guidance from other jurisdictions, it is of paramount importance for this court to examine considerations specific to the State of Hawai'i and HRS § 480-2 when determining whether UDAP liability applies to the actual practice of law.

a.    **Hawai'i Case Law is Inconsistent With Applying UDAP Liability to The Actual Practice of Law**

The Majority contends that Lacy is subject to UDAP liability under Cieri because he actively facilitated a business transaction.  Majority at 7-12.  However, Cieri does not control as it is clearly distinguishable from the instant case.

The plaintiffs in Cieri brought a UDAP claim against a licensed real estate broker who failed to disclose that the house plaintiffs purchased from the broker's client had a long history of plumbing problems, a fact which was known to the broker. Cieri, 80 Hawai'i at 56-57, 905 P.2d at 31-32.  The Cieri court held that "as a matter of law . . . a [real estate] broker or sales person actively involved in a real estate transaction invariably engages in conduct in any trade or commerce," namely "the systematic sale or brokering of interests in real property," and is thus subject to liability under HRS § 480-2.  Id. at 65, 905 P.2d at 40.

The Cieri court confined its discussion to the context

of real estate transactions and further narrowed its holding by specifically distinguishing real estate brokers and salespersons from other actors.[12]  The court acknowledged that where the defendant is not a real estate broker or salesperson, whether a real estate sale involving the defendant implicates the applicability of HRS chapter 480 "must be determined on a case-by-case basis by an analysis of the transaction."  Id.  Cieri is thus distinguishable from the instant case as Lacy is not a licensed real estate broker, did not facilitate a real estate transaction, and did not engage in the trade or commerce of the systematic sale or brokering of interests in real property.

Lacy was introduced to Goran and Maria as "the best attorney on the island."  He entered into an attorney-client relationship with Goran and Maria and, unlike the real estate broker in Cieri, Lacy engaged in the actual practice of law in his representation of Goran and Maria.  Leading up to, and including, the completion of the sale of RLS, Lacy reviewed hundreds of documents with Goran, referred Goran to a CPA to obtain an appraisal, and recommended that Goran form a limited liability company.  He drafted GPLLC's incorporation documents, the Sale Agreement, the promissory note, the Management Services

_____

    [12]    As noted in Cieri, in the context of real estate transactions, the Massachusetts Supreme Court similarly declined to apply UDAP liability "regardless of the fact the transaction is not in pursuit of the [defendant's] ordinary course of business," holding such liability applies to licensed real estate brokers, but not private sellers.  Lantner v. Carson, 373 N.E.2d 970, 977 (1978).

Agreement, and a limited power of attorney. Following completion of the sale, Lacy met with Goran several times and advised him to wait for transfer of the PUC license before taking any legal action against Rnic.

In doing so, Lacy engaged in legal research, contracting, strategy, and advising. These services cannot be provided by a non-attorney real estate broker. As such, Lacy's representation of Goran and Maria was not, as the Majority asserts, analogous to the role played by the real estate broker in <u>Cieri</u>. Majority at 11.

In direct contradiction to the language in <u>Cieri</u>, the Majority broadens <u>Cieri</u>'s holding to apply not just to any real estate broker or salesperson actively involved in a real estate transaction, but to anyone who "utilize[s] the specialized professional services with which he makes his living . . . to facilitate a commercial transaction of a type with which he purported to have professional expertise," including attorneys engaged in the actual practice of law. Majority at 10. The Majority asserts that because "Lacy is alleged to have engaged in actions during the sale of RLS analogous to those of the property manager in <u>Cieri</u>," Lacy's alleged conduct is "necessarily" subject to UDAP liability. Majority at 11-12. The <u>Cieri</u> court did not, however, intend for its holding to apply so broadly. Rather, the court expressly limited its holding to real estate brokers and salespersons actively involved in real estate

transactions. <u>Cieri</u>, 80 Hawai'i at 65, 905 P.2d at 40.

First, it is important to note that the defendant in <u>Cieri</u> was not simply a property manager helping to sell a house; she was a licensed real estate broker engaged in the 'trade or commerce' of facilitating real estate sales.[13] <u>Cieri</u>, 80 Hawai'i at 56, 65, 905 P.2d at 31, 40. Only <u>real estate brokers and salespersons</u> who are actively involved in real estate transactions are per se subject to UDAP liability under <u>Cieri</u>. Outside of that narrow context, however, "whether a transaction occurs within a business context, thus implicating the applicability of HRS chapter 480 . . ., must be determined on a case-by-case basis by an analysis of the transaction." <u>Id.</u> at 65, 905 P.2d at 40. Thus, the <u>Cieri</u> defendant was subject to UDAP liability due to the fact that she was a licensed real estate broker. Had she just been a property manager, the result may have been different.[14]

Second, by eliminating any distinction between

_____

[13] Pursuant to HRS § 467-7, "[n]o person . . . shall act as [a] real estate broker or real estate salesperson . . . without a license previously obtained under and in compliance with [HRS Chapter 467] and the rules and regulations of the real estate commission."

[14] The Majority cites <u>Cieri</u> for the assertion that "there is little dispute that, had Lacy simply been a consultant or a similar business professional, many of the services he provided would clearly amount to conduct in trade or commerce under our precedent." Majority at 12. Respectfully, this misconstrues <u>Cieri</u>. Under <u>Cieri</u>, had Lacy been a real estate broker or salesperson actively involved in a real estate transaction, his actions would have clearly amounted to conduct in trade or commerce. Had he been a consultant or a similar business professional, however, whether the services he provided were subject to UDAP liability would have to be determined on a case-by-case analysis of the transaction. <u>Cieri</u>, 80 Hawai'i at 65, 905 P.2d at 40.

22

attorneys and real estate professionals with regard to the application of UDAP liability, the Majority now adopts the very argument that we unanimously rejected in <u>Hungate</u>. The plaintiff in <u>Hungate</u> cited <u>Cieri</u> for the proposition that a real estate agent or broker can be subject to UDAP liability under HRS § 480-2. He argued that, like the defendant in <u>Cieri</u>, the defendant attorney acted as an agent in conducting a foreclosure, and thus should have been held liable under the UDAP statute. <u>Hungate</u>, 139 Hawaiʻi at 412, 391 P.3d at 19. This court rejected the plaintiff's argument and expressly distinguished between real estate brokers and attorneys with regard to UDAP liability under HRS § 480-2.[15] We stated:

> [T]he unique nature of the attorney-client relationship warrants distinguishing the role of broker and attorney for purposes of this case. Sellers and purchasers of real estate often "utilize and rely on brokers for their expertise and resources, including access to data in locating properties as well as determining pricing of 'comparables' as a basis for negotiations." <u>Cieri</u>, 80 Hawaiʻi at 65, 905 P.2d at 40. Hence, the role of a broker is to provide clients with expertise and resources in real estate transactions.
>
> In contrast, the role of an attorney involves representing a client's interests against those of an opposing party within an adversary system. Attorneys

---

[15] As in <u>Hungate</u>, the <u>Cieri</u> plaintiff was not the defendant's client, but was the other party to the transaction at issue. <u>Cieri</u>, 80 Hawaiʻi at 57, 905 P.2d at 32. Despite this fact, the <u>Cieri</u> court determined the defendant was properly subject to UDAP liability pursuant to HRS § 480-2. <u>Id.</u> at 65, 905 P.2d at 40. However, in <u>Hungate</u>, this court declined to apply UDAP liability to the defendant attorney. <u>Hungate</u>, 139 Hawaiʻi at 413, 391 P.3d at 20. Thus, it is clear that our holding in <u>Hungate</u> turned on the defendant's unique role as an attorney, not the fact that he was being sued by an opposing party.

> bear a duty to zealously represent clients "within the bounds of the law." <u>Giuliani v. Chuck</u>, 1 Haw. App. 379, 384, 620 P.2d 733, 737 (1980); <u>see also</u> Hawai'i Rules of Professional Conduct, "Preamble," ¶ 2; ¶ 8; ¶ 9. . . .
>
> Consequently, based on the allegations against Rosen, we decline to recognize a UDAP claim against him by Hungate under § 480-2 in the instant foreclosure action.

<u>Hungate</u>, 139 Hawai'i at 412-13, 391 P.3d 19-20.

The Majority's position in the instant case is therefore contrary to this court's precedent. As we recognized in <u>Hungate</u>, there are unique policy reasons attendant to the practice of law that militate against the imposition of UDAP liability. Thus, to the extent that this court has touched upon the issue, it has declined to apply UDAP liability to the actual practice of law.

### b. The Application of UDAP Liability to the Actual Practice of Law May Interfere with this Court's Exclusive Regulation of the Legal Profession

Article VI, section 7 of the Hawai'i Constitution provides, "[t]he supreme court shall have power to promulgate rules and regulations in all civil and criminal cases for all courts relating to process, practice, procedure and appeals, which shall have the force and effect of law."[16] This provision places <u>full rule-making power</u> "where it belongs - in the Supreme

---

[16] Article VI, section 7 is identical to article V, section 6 of the 1959 Hawai'i Constitution ("The supreme court shall have power to promulgate rules and regulations in all civil and criminal cases for all courts relating to process, practice, procedure and appeals, which shall have the force and effect of law."). HAW. CONST. of 1959, art. V, § 6.

Court, [to] make for an efficient and orderly dispatch of the business of the courts."  Stand. Comm. Rep. No. 37 in 1 Proceedings of the Constitutional Convention of Hawaiʻi of 1950, at 174-75 (1960).

Pursuant to this authority, this court has the "ultimate responsibility to regulate the practice of law in this state and to ensure that the integrity of the profession is maintained by disciplining attorneys who indulge in practices inconsistent with the high ethical standards demanded of all members of the bar."  Office of Disciplinary Counsel v. Gould, 119 Hawaiʻi 265, 273-74, 195 P.3d 1197, 1205-06 (2008)(internal quotation marks and citation omitted); In re Disciplinary Bd. of Hawaiʻi Supreme Court, 91 Hawaiʻi 363, 368, 984 P.2d 688, 693 (1999) (citing Haw. Const. art. VI, § 7) ("The Office of Disciplinary Counsel and the Disciplinary Board are creatures of this court, created pursuant to the court's inherent and constitutional authority to regulate the practice of law"); Disciplinary Bd. of Hawaiʻi Supreme Court v. Bergan, 60 Haw. 546, 553, 592 P.2d 814, 818 (1979) ("It is the solemn duty of this court to regulate the practice of law in this state . . . .").

This rule-making power has been consistently recognized in our case law and exercised through our promulgation of the Hawaiʻi Rules of Professional Conduct.  In re Ellis, 53 Haw. 23, 23 n.1, 487 P.2d 286, 287 n.1 (1971) ("This court has inherent power to regulate matters before it regarding the practice of

25

law."); <u>Office of Disciplinary Counsel v. Lau</u>, 79 Hawai'i 201, 204, 900 P.2d 777, 780 (1995) (the Hawai'i Supreme Court is "the ultimate trier of both fact and law in cases involving the discipline of attorneys"); Rules of the Supreme Court of the State of Hawai'i Rule 2.1 ("Any attorney admitted to practice law in this state . . . is subject to the <u>exclusive</u> disciplinary jurisdiction of the supreme court . . . .") (emphasis added). "Although other professions also have been granted powers of self-government, <u>the legal profession is unique</u> in this respect because of the close relationship between the profession and the processes of government and law enforcement . . . manifested in the fact that <u>ultimate authority over the legal profession is vested largely in the courts</u>."  Hawai'i Rules of Professional Conduct, "Preamble," ¶ 10 (emphases added).

The Majority argues that the legislature did not intend to exclude lawyers from UDAP liability under HRS § 480-2. Majority at 24-28.  However, this court's exclusive constitutional authority to regulate the practice of law had been long-established by the time the legislature enacted HRS § 480-2.[17]  Further, the legislature entrusted the courts to exercise discretion in defining the scope of liability under HRS § 480-2.

---

[17]    What is now article VI, section 7 of the Hawai'i Constitution was drafted by the delegates to the Constitutional Convention of 1950.  It was approved by the legislature and a plebiscite vote later that year, and became effective in 1959 upon Hawai'i's admission to the Union.  HAROLD S. ROBERTS, PROCEEDINGS OF THE CONSTITUTIONAL CONVENTION OF HAWAI'I OF 1950, VOLUME I JOURNAL AND DOCUMENTS, Preface at xi (1960).  HRS § 480-2 was not enacted until 1965.  1965 Sess. Laws Act 129, at 176-77.

Stand. Comm. Rep. No. 55, in 1965 House Journal, at 539 (stating, "the courts of Hawai'i must also necessarily give due regard to problems peculiar or pertinent to the State of Hawai'i"). If the legislature intended to limit this discretion and encroach on this court's constitutional authority by exposing attorneys to UDAP liability under HRS § 480-2, it would have done so expressly. Yet, the plain language and legislative history of HRS § 480-2 reveal no indication of such intent.[18]

Although the Majority asserts that the legislature intended for HRS § 480-2 to apply to attorneys just as it does to real estate brokers, carpenters, bakers, travel agents, and shoe salespersons, there is a fundamental distinction between those occupations and the practice of law: regulation of the practice of law is entrusted by the Hawai'i Constitution to the Supreme

---

[18] The legislature first added § 480-2's prohibition on "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" to the Hawai'i Antitrust Act in 1965. 1965 Haw. Sess. Laws Act 129, at 176-77. The consumer protection statute has been amended over the years; however, none of the amendments addressed the practice of law. For example in 1987, the legislature defined class actions and made several changes to chapter 480. 1987 Haw. Sess. Laws Act 274, at 837-840; H. Stand. Comm. Rep. Nos. 457 and 575, in 1987 House Journal, at 1315, 1371; S. Conf. Comm. Rep. No. 105, in 1987 Senate Journal, at 872-73; S. Stand. Comm. Rep. No. 1056, in 1987 Senate Journal, at 1344-45. In 1988, the legislature amended HRS § 480-2 to specify that Hawai'i courts must "give due consideration" to the Federal Trade Commission decisions and federal courts interpreting a comparable federal consumer protection statute. See H. Stand. Comm. Rep. No. 483-88, in 1988 House Journal, at 1024; S. Stand. Comm. Rep. Nos. 2329 and 2635, in 1988 Senate Journal, at 993-94, 1118. In 2002, the legislature amended the consumer protection statute to permit both private actions for unfair methods of competition and private indirect purchaser antitrust class actions. 2002 Haw. Sess. Laws Act 229, at 915-918; H. Stand. Comm. Rep. No. 1118, in 2002 House Journal, at 1665-66; S. Stand. Comm. Rep. Nos. 448 and 931, in 2002 Senate Journal, at 1116-17, 1295. The legislative history therefore provides no indication that the legislature intended for UDAP liability to extend to the practice of law.

Court.  Majority at 26; HAW. CONST. art. VI, § 7.  Given this grant of regulatory authority to a co-equal branch of government,[19] it is fair to presume that the legislature would make its intent to encroach on that authority through § 480-2 explicit.[20]

In sum, I share the concern expressed by other state courts that subjecting the actual practice of law to UDAP liability under HRS § 480-2 may interfere with this court's regulation of the practice of law, and is inappropriate absent clearly expressed legislative intent.  See, e.g., Beyers, 937 A.2d at 1091-92 (because the Pennsylvania legislature "has no

---

[19]     The Constitutional Convention's Committee on the Judiciary explained the significance of the judiciary's role in our constitutional system:
> Your Committee on [the] Judiciary . . . recognizes that it is dealing with a coordinate branch of government.  It is the branch to which is entrusted the safe guarding of our civil liberties.  Without a strong Judiciary, democratic processes would speedily disintegrate and the rights of the individual might be swallowed up in an all powerful state.

Stand. Comm. Rep. No. 37 in 1 Proceedings of the Constitutional Convention of Hawaiʻi of 1950, at 173 (1960).

[20]     Additionally, in Hungate, this court recognized that "the unique nature of the attorney-client relationship warrants distinguishing the role of [real estate] broker and attorney for purposes of [UDAP liability under HRS § 480-2]."  Hungate, 139 Hawaiʻi at 413, 391 P.3d at 19 (emphasis added).  The legislature is presumed to know of this court's interpretations of statutory language, and legislative bodies commonly "enact laws to circumvent judicial constructions deemed . . . contrary to the true meaning of the statute construed."  State v. Casugay-Badiang, 130 Hawaiʻi 21, 27, 305 P.3d 437, 443 (2013) (citations omitted); Terr. v. Ota, 36 Haw. 80, 98-99 (1942).  However, the legislature has not amended HRS § 480-2 or indicated any dissatisfaction with this court's interpretation of the statute.  As such, this court's determination that UDAP liability does not apply to attorneys as it does to real estate brokers has the tacit approval of the legislature.  Cf. State v. Hussein, 122 Hawaiʻi 495, 529, 229 P.3d 313, 348 (2010).

28

authority under the Pennsylvania constitution to regulate the conduct of lawyers in the practice of law," any application of the Unfair Trade Practices and Consumer Protection Law to attorney misconduct "would purport to regulate the conduct of attorneys and would be an impermissible encroachment upon the power of this Court."). In suggesting otherwise, the Majority introduces significant uncertainty in the regulation of the legal profession.

>    c.   **The Application of UDAP Liability to the Actual Practice of Law is Duplicative and Unnecessary**

In addition to the oversight and professional discipline provided by this court, attorneys in the State of Hawai'i are subject to civil actions sounding in tort and contract, as well as criminal prosecution.[21] In the instant case, for example, Goran and Maria brought claims against Lacy for legal malpractice, conspiracy to commit fraud, IIED, and NIED. GPLLC brought additional claims against Lacy for legal malpractice, fraud, and punitive damages. The existing sources of civil liability, in addition to criminal prosecution,

---

[21] HRPC Rule 8.4 ("It is professional misconduct for a lawyer to: . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects; . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ."); Hungate, 139 Hawai'i at 413 n.22, 319 P.3d at 20 n.22 (an opposing party cannot recover against an attorney under HRS § 480-2, but attorneys may still be held liable for patently illegal activities conducted on behalf of the attorney's client); Guiliani, 1 Haw. App. at 383-84, 620 P.2d at 736-37 ("that an attorney representing a client may be held personally liable to an adverse party or a third person who sustains injury as a result of an attorney's intentional tortious acts is well settled."); Higa v. Mirikitani, 55 Haw. 167, 517 P.2d 1 (1973) (legal malpractice suits are hybrids of tort and contract).

adequately deter and punish attorney misconduct, while appropriately compensating aggrieved clients.

In Hungate, we distinguished between attorneys and real estate professionals for purposes of UDAP liability due to the "unique nature of the attorney-client relationship" and public policy considerations. Hungate, 139 Hawaiʻi at 412-13, 391 P.3d at 19-20. Accordingly, we declined to recognize a UDAP claim brought against an attorney by the opposing party to a foreclosure action. Id. at 413, 391 P.3d at 20. We made clear, however, that although we declined to subject attorneys to additional liability in the form of UDAP claims, we were not shielding attorneys from existing sources of liability to which they were already subject. Id. at 413, n.22, 391 P.3d at 20, n.22. These sources of liability, as well as the legal remedies available to aggrieved clients under the existing state of the law, are similarly left undisturbed by this dissenting position.

As noted by the Majority, we stated, "[o]ur desire to avoid creating unacceptable conflicts of interest in this context, to protect attorney-client counsel and advice from the intrusion of competing concerns, and to allow adequate room for zealous advocacy, does not encompass, for example, allowing attorneys to conduct patently illegal activities on behalf of clients." Id. at 413 n.22, 319 P.3d at 20 n.22. The Majority characterizes this footnote as a "pronouncement that particularly egregious misconduct may subject an opposing counsel to HRS

§ 480-2(a) liability." Majority at 22, n.14. However, this interpretation is unsupported by Hungate as a whole.

Many of the policy concerns fundamental to our holding in Hungate apply equally to UDAP claims brought against attorneys, regardless of whether they are brought by clients or opposing parties. As discussed above, we acknowledged the unique nature of the attorney-client relationship and attorneys' heightened vulnerability to UDAP liability, given that HRS § 480-2 lacks "a more rigorous or precise state of mind requirement." Id. at 413, 391 P.3d at 20. Citing to Short, which involved a UDAP claim brought against the plaintiff's own attorney, we agreed that the imposition of UDAP liability on the actual practice of law would require an attorney to insure the correctness of his or her opinions and strategies, rendering it virtually impossible for an attorney to effectively perform the traditional role of legal counselor. Id., 139 Hawai'i at 413, 391 P.3d at 20 (citations, internal quotations, and brackets omitted).

The Majority notes that there is no exception for the practice of law in the application of criminal statutes.[22]

---

[22] The Majority attempts to analogize UDAP liability to criminal liability in order to show that the imposition of UDAP liability upon the actual practice of law, like criminal prosecution, "does not interfere with this court's regulation of the practice of law." Majority at 31.

The defendant in Short similarly argued that if application of the CPA to lawyers violates the court's regulatory power, criminal laws could not be applied to attorneys. Short, 691 P.2d at 170. However, the Washington

(continued...)

31

Majority at 21, 31. This point serves to highlight the several layers of existing liability that the actual practice of law is already subject to. Even in the absence of UDAP liability, attorneys are not "allowed" to engage in patently illegal activities on behalf of clients. Such conduct would subject an attorney to professional discipline under the Hawai'i Rules of Professional Conduct, civil liability in the form of legal malpractice and tort actions, and criminal prosecution. HRPC Preamble 5 ("A lawyer's conduct should conform to the requirements of the law."); HRPC Rule 8.4 (It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer); Guiliani, 1 Haw. App. at 383-84, 620 P.2d at 736-37 ("[T]hat an attorney representing a client may be held personally liable to an adverse party or a third person who sustains injury as a result of an attorney's intentional tortious acts is well

_____

(...continued)
Supreme Court rejected this argument as to the actual practice of law, holding that UDAP liability applies only to the entrepreneurial aspects of law under Washington's CPA. Id. at 170-71.

I agree. Unlike the imposition of UDAP liability on the actual practice of law, criminal prosecution is not duplicative or unnecessary. While this court may discipline an attorney professionally for the commission of a crime, it does not have authority to prosecute and sentence the attorney for that crime. No other framework exists to hold attorneys personally responsible for crimes they may commit. In contrast, this court's close regulation of the practice of law, as well as the imposition of civil liability, adequately deter non-criminal attorney misconduct and impose appropriate professional discipline upon attorneys, hold attorneys personally liable for their misconduct, and provide aggrieved clients with sufficient legal recourse.

settled."). Thus, the application of UDAP liability to the actual practice of law is duplicative and unnecessary.

>    **d.    Applying UDAP Liability to the Practice of Law is Against Public Policy**

In <u>Hungate</u>, this court recognized the chilling effect that applying UDAP liability to the actual practice of law could have on the legal profession. <u>Hungate</u>, 139 Hawai'i at 412-13, 391 P.3d at 19-20. This chilling effect is especially concerning in light of the broad scope of liability adopted by the Majority, and the treble damages awarded to UDAP plaintiffs under Hawai'i law. <u>Compare</u> Wash. Rev. Code Ann. § 19.86.090 (generally awarding successful UDAP plaintiffs actual damages, but allowing courts to increase the award of damages up to an amount equal to treble damages) <u>with</u> HRS § 480-13(b) (awarding successful UDAP plaintiffs the greater of $1,000 or treble damages).

Despite its determination that Lacy's conduct is subject to UDAP liability regardless of whether it constituted the practice of law, the Majority states that "[i]n other instances, whether the challenged conduct occurred during the provision of legal services may be a factor to be considered in the case-by-case analysis of the transaction to determine whether it occurred in the business context." Majority at 13, n.9 (internal quotation marks and ellipsis omitted). I find no comfort in this limitation, however, given the Majority's holding that "it is no defense that [a defendant's] actions constituted

33

or were intermingled with legal services." Majority at 12-13. In fact, the Majority declines to determine whether Lacy's conduct amounted to the practice of law, deeming it to be irrelevant to the UDAP analysis. The Majority's statement that HRS § 480-2 "places within its ambit virtually all activity occurring in the business context," followed by examples of statutes with broad application, further demonstrates that its approach will impose UDAP liability upon all aspects of the practice of law.[23] Majority at 24.

The increased exposure to liability imposed upon attorneys by the Majority's holding could make the procurement and maintenance of legal malpractice insurance prohibitively expensive.

**B. Lacy's Alleged Misconduct Falls Within the Actual Practice of Law**

In the instant case, Goran and Maria's UDAP claim concerns the actual practice of law. As discussed above, Lacy entered into an attorney-client relationship with Goran and Maria and engaged in legal research, contracting, strategy, and advising on their behalf. These services clearly constitute the actual practice of law, rather than the business or entrepreneurial aspects of the legal profession. See, e.g.,

---

[23] As noted in Cieri, even Massachusetts' UDAP statute is not "broad enough to reach any type of commercial exchange, regardless of the nature of the transaction or the character of the parties involved." Cieri, 80 Hawai'i at 63, 905 P.2d at 38 (citing Lantner, 373 N.E.2d at 977).

Kessler, 994 F.Supp. at 243 (the legal, advisory, analytical aspects of law constitute the actual practice of law); Short, 691 P.2d at 168 (the actual practice of law includes the performance of legal advice and services).

Further evidencing the fact that Lacy's conduct constituted the actual practice of law, Pleho Parties argued that "Lacy used his position of trust and confidence as [their] attorney to fraudulently induce them into purchasing [RLS] for $1,500,000." Because Goran and Maria's UDAP claim is directed to Lacy's competence and the strategy he employed, it amounts to an allegation of legal malpractice. In fact, Pleho Parties actually alleged Lacy's conduct constituted legal malpractice. Lacy's conduct should thus be exempt from UDAP liability under HRS § 480-2. Short, 691 P.2d at 168.

### III. CONCLUSION

For the foregoing reasons, I respectfully dissent. I conclude that the actual practice of law is not subject to UDAP liability under HRS § 480-2. Lacy's purported misconduct constitutes the actual practice of law, and thus does not subject him to UDAP liability under HRS § 480-2. Therefore, the ICA did not err in affirming the circuit court's grant of summary judgment in Lacy Parties' favor as to Goran and Maria's UDAP claim.

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

